ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS Recurrido | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| v. | KLCE202500054 | Caso Núm. SJ2024CV09169 |
| UNIÓN INDEPENDIENTE AUTÉNTICA DE EMPLEADOS DE LA AAA Peticionario | | Sobre: Impugnación o confirmación de laudo |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2025.

Comparece la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados, (UIA o peticionaria) en representación del señor Benjamín Guerra Delgado (señor Guerra Delgado) y nos solicita la revocación de la *Sentencia*[1] notificada el 20 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). En esta, el TPI revocó el laudo de arbitraje emitido el 3 de septiembre de 2024 por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (NCA).

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

**I.**

La UIA presentó una solicitud de arbitraje ante la NCA, en representación del señor Guerra Delgado. Ello, al amparo del Convenio Colectivo (entre la UIA y la AAA) y el procedimiento

---

[1] En lo pertinente al presente caso, la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R. 32(D), establece que, el recurso de *certiorari* es el vehículo procesal adecuado para revisar las resoluciones, órdenes o sentencias finales de un laudo de arbitraje del Tribunal de Primera Instancia.

disciplinario allí establecido. Como parte del procedimiento de arbitraje, las partes presentaron sus respectivos proyectos de sumisión para determinar la controversia. Ante la aparente falta de acuerdo de sumisión entre las partes, el árbitro determinó que el asunto a resolver era y citamos:

> Determinar, conforme al Convenio Colectivo y la prueba aportada, si la destitución sumaria impuesta por el Patrono al Sr. Benjamín Guerra Delgado, fue justificada o no. De ser justificada, confirmar la destitución del empleado. De no ser justificada, reinstalar al querellante en su puesto y ordenar la restitución de los haberes dejados de percibir.[2]

Tras la celebración de la audiencia requerida, en la que testificaron el señor José R. Matos Báez, el señor Juan F. Cotto Hernández y el señor Guerra Delgado, el árbitro determinó lo siguiente:

> En efecto, la evidencia sobre abandono de empleo presentada por la AAA contra el señor Guerra, demuestra que este incumplió con la directriz del Patrono al no regresar a su trabajo el 28 de diciembre de 2020, luego del disfrute de la licencia médico familiar. Sin embargo, si bien ha quedado demostrado que el querellante infringió las Reglas Disciplinarias, no es menos cierto que igualmente la AAA también incumplió con el término de veinte (20) días laborables dispuesto en el Artículo IX(B) Sección 3, Casos Sumarios, acápite 1, supra, para solicitar al director auxiliar de Recursos Humanos Regional la investigación disciplinaria.[3]

En su consecuencia dejó sin efecto la destitución sumaria y determinó que el señor Guerra Delgado incurrió en ausencias sin autorización y dejar de notificar una ausencia al superior. Por ello, aplicó la pena de amonestación escrita por cada infracción. Además, ordenó la restitución del empleado a su puesto, con el pago de los haberes dejadas de percibir.

Inconforme con la referida determinación, la UIA compareció ante el TPI, el 2 de octubre de 2024, y solicitó la revocación del laudo en cuestión e hizo los siguientes señalamientos:

> Erró el Árbitro al emitir un laudo de arbitraje en el que determinó en violación al Convenio Colectivo que la imposición de la Regla Disciplinaria 5 fue injustificada sin

---

[2] Apéndice, pág. 47.
[3] Apéndice, pág. 56.

aplicar lo dispuesto en el Convenio Colectivo como abandono de empleo y según negociado por las partes.

Erró el Árbitro al determinar que la AAA incurrió en error manifiesto en el proceso disciplinario al determinar que la AAA incumplió con el Artículo IX (B), Sección 3, Casos Sumarios, acápite 1 sin considerar lo dispuesto en el Convenio Colectivo sobre la Regla Disciplinaria 5-Abandono de Empleo y aplicar incorrectamente los términos dispuestos en el procedimiento disciplinario pactado en el Convenio Colectivo en clara violación a la política pública sobre la negociación colectiva.

Incurrió en error el árbitro al emitir un laudo sin resolver todos los asuntos llevados a su consideración y en clara violación a la política pública sobre la negociación colectiva y el convenio colectivo.[4]

En apoyo a su contención, la UIA arguyó que, los remedios concedidos por el árbitro, no corresponde a lo pactado por las partes en el Convenio Colectivo. Ello, en cuanto al abandono en el empleo y sobre cuándo en efecto, se puede advenir en conocimiento oficial del mismo. De esta forma, a su entender, el árbitro no resolvió todos los asuntos que fueron presentados, los cuales se desprenden de los hechos. Puntualizó que, el Convenio Colectivo establece que, un abandono de empleo es incurrir en ausencias injustificadas durante un periodo consecutivo por más de cinco días laborables. Añadió que, no es posible exigirle a un supervisor inmediato que advenga en conocimiento oficial de abandono de empleo antes de que se configure el abandono al sexto día laborable de ausencias injustificadas de forma consecutiva. Destacó que, en este caso, el señor Guerra Delgado incumplió con la directriz del Patrono al no regresar a su trabajo el 28 de diciembre de 2020, luego del disfrute de la licencia médico familiar. Expuso que, el Árbitro estableció como un hecho probado lo anterior y que, el Patrono pudo demostrar que el empleado estuvo ausente sin justificación desde el 28 de diciembre de 2020 hasta el 2 de febrero de 2021. Destacó que, el Árbitro también determinó que, el señor Guerra Delgado no se presentó a trabajar el 28 de diciembre de 2020 como correspondía.[5]

---

[4] Apéndice, págs. 34-35.
[5] Apéndice, págs. 38-39.

Sostuvo que, en este caso se configuró el abandono, el 5 de enero de 2021, y desde esa fecha inició el término de veinte (20) días laborables para presentar la solicitud de investigación.

A lo antes, se opuso la UIA.[6] En esencia arguyó que, los errores no se cometieron. Puntualizó que, la AAA incumplió crasamente con los términos dispuestos en el Convenio Colectivo, Sección 3, Artículo IX (B), para tramitar el referido de la investigación. Al entender sobre lo antes, el TPI consignó las siguientes determinaciones de hechos:

1. Las relaciones obrero-patronales entre las partes están regidas por un Convenio Colectivo, con vigencia del 1ro de enero de 2012 al 31 de diciembre de 2015, el cual ha sido extendido en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por la Ley 9 del 30 de junio de 2021 conocida como "Ley para Garantizar la Negociación Colectiva."
2. El Patrono, la AAA, le aprobó al señor Benjamín Guerra Delgado, una licencia médico familiar que comprendía el periodo desde el 2 de julio hasta el 25 de diciembre de 2020.
3. El señor Guerra Delgado, luego de finalizada la referida licencia, tenía que reportarse a trabajar el 28 de diciembre de 2020.
4. El señor Guerra Delgado no se presentó a trabajar el 28 de diciembre de 2020, como correspondía.
5. El área de trabajo del señor Guerra Delgado se mantuvo en jornada regular de trabajo como de ordinario durante el periodo del 24 de diciembre de 2020 hasta el 1 de enero de 2021.
6. En el Convenio Colectivo entre las partes, en su Artículo IX (B), Sección 3, Casos Sumarios, acápite 1 las partes acordaron lo siguiente:

   Una vez que el supervisor inmediato tenga conocimiento oficial de los hechos, enviará una solicitud por escrito al director Auxiliar de Recursos Humanos Regional la cual indicará los hechos que motivan la investigación disciplinaria, no más tarde de los veinte (20) días laborables siguientes a la fecha de tener conocimiento oficial de dichos hechos.

7. El Árbitro concluyó que conforme el Artículo IX (B), Sección 3, Casos Sumarios, acápite 1, los veinte (20) días laborables para presentar la solicitud de investigación se cumplían el 27 de enero de 2021.
8. El Árbitro concluyó que el supervisor inmediato, solicitó la investigación el 1 de febrero de 2021, pasado tres (3) días del término acordado por las partes en el acápite 1 de la Sección 3, Casos Sumarios del Artículo IX (B).
9. El patrono presentó el récord semanal de asistencia del señor Guerra Delgado desde el 28 de diciembre de 2020 hasta el 2 de febrero de 2021. Dicho documento refleja que no hubo registro de asistencia desde el 28 de diciembre de 2020 hasta el 2 de febrero de 2021.
10. En el Artículo IX (B) la Regla Disciplinaria 5 -Abandono de Empleo, se define conforme el Convenio Colectivo aplicable

---

[6] Apéndice, págs. 16-24.

como: Estar ausente injustificadamente durante un periodo consecutivo de más de cinco (5) días laborables.

11. El señor Guerra Delgado estuvo ausente desde el 28 de diciembre de 2020 hasta el 2 de febrero de 2021. Durante el periodo del 28 de diciembre de 2020 hasta el 5 de enero de 2021, el señor Guerra Delgado estuvo ausente injustificadamente por un periodo de más de cinco días laborables consecutivos, constituyéndose el abandono de empleo.

12. Para el 5 de enero de 2021 el señor Guerra Delgado incurrió en su sexto (6) día laborable de ausencia consecutiva sin justificación.

13. Para tomar conocimiento oficial de un abandono de empleo conforme pactado en el Convenio Colectivo en el Artículo XI (B), el empleado tiene que incurrir en ausencias injustificadas durante un periodo consecutivo de más de cinco (5) días laborables.

14. El 5 de enero de 2021, fecha en que se configura el abandono de empleo conforme definido y pactado en el Convenio Colectivo, comenzó a cursar el término de veinte (20) días laborables del Artículo IX (B) Sección 3 acápite 1 al tomarse conocimiento oficial del hecho del abandono de empleo.

15. Según, el término establecido en el Artículo IX (B) Sección 3 acápite 1 y lo dispuesto en la Regla Disciplinaria 5 del Convenio Colectivo, el supervisor inmediato tenía hasta el 4 de febrero de 2021 para presentar la solicitud de investigación por abandono de empleo.

16. El supervisor inmediato presentó la solicitud de investigación el 1ro de febrero de 2021, diecisiete (17) días laborables desde que podía advenir en conocimiento oficial del abandono de empleo, por ausentarse el empleado más de cinco (5) días consecutivos sin justificación conforme al Convenio Colectivo.

17. El 3 de febrero de 2021, el Patrono, vía carta certificada, notificó al querellante su intención de disciplinarlo, y también una citación para vista informal no evidenciaria a celebrarse el 25 de febrero de ese año.

18. El señor Guerra Delgado compareció a la vista evidenciaria el 25 de febrero de 2021, acompañado por el presidente de la UIA, el Sr. Luis de Jesús Rivera.

19. El 15 de marzo de 2021, el Patrono notificó al señor Guerra Delgado, vía carta certificada, que le destituía de forma sumaria.

20. La evidencia sobre abandono de empleo presentada por la AAA contra el señor Guerra [Delgado], demuestra que este incumplió con la directriz del Patrono al no regresar a su trabajo el 28 de diciembre de 2020, luego del disfrute de la licencia médico familiar.

21. La vista de arbitraje se celebró el 25 de enero de 2023.

22. En la vista de arbitraje, la AAA y la UIA presentaron sus respectivos proyectos de sumisión.

23. El proyecto de sumisión de la UIA no alegó ningún planteamiento por falta de arbitrabilidad procesal y/o sustantiva.

24. Conforme la facultad que le brinda el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, el Árbitro entendió que el asunto a resolver era:

   Determinar, conforme al Convenio Colectivo y la prueba aportada, si la destitución sumaria impuesta por el Patrono al Sr. Benjamín Guerra Delgado, fue justificada o no. De ser justificada, confirmar la destitución del empleado. De no ser justificada, reinstalar al querellante en su puesto y ordenar la restitución de los haberes dejados de percibir.

25. El Árbitro concluyó que la imposición de la Regla Disciplinaria 5, por parte de la AAA al señor Benjamín Guerra Delgado, la cual implica una destitución sumaria, fue injustificada por lo que modificó la acción disciplinaria.

26. Conforme el Laudo las faltas, en efecto cometidas por el empleado Guerra Delgado, son consistente con las Reglas Disciplinarias 2 y 4, las que consisten en Ausencia Sin Autorización y Dejar de Notificar una Ausencia al Supervisor, respectivamente.

27. El Laudo del caso A-21-894 fue emitido por el árbitro Francisco A. Torres Arroyo el 3 de septiembre de 2024 y notificado ese mismo día mediante correo electrónico.

28. El 4 de septiembre de 2024, el Árbitro emitió Fe de Errata para rectificar error cometido en la enumeración del Artículo IX (B), Disposiciones Generales de números 1 y 2 a números 5 y 6.[7]

En síntesis, el foro primario razonó que, el análisis del árbitro fue incorrecto y contrario a los hechos probados y lo dispuesto en el Convenio Colectivo. En su consecuencia, declaró Ha Lugar el petitorio de la AAA, revocó el laudo de arbitraje núm. A-21-896 y decretó la destitución sumaria del señor Guerra Delgado.

Aun insatisfecho con el dictamen, el peticionario recurre ante esta Curia y mediante el presente *Recurso de Certiorari* levanta el siguiente señalamiento:

> Erró el Tribunal de Primera Instancia al revocar un Laudo emitido por el Negociado, luego de concluir que la determinación del Árbitro fue contraria a disposiciones del Convenio Colectivo sustituyendo su criterio por el criterio del [Á]rbitro en un ámbito reservado al criterio arbitral: la interpretación de las cl[á]usulas de un convenio colectivo.

En cumplimiento con nuestra *Resolución* emitida el 23 de enero de 2025, la AAA acreditó su *Oposición a Recurso de Certiorari*, el 3 de febrero de 2025. Con el beneficio de las comparecencias de las partes, procedemos a resolver.

**II.**

**A. Expedición del auto de *certiorari***

La Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.32(D), establece que **el recurso de *certiorari* es el vehículo procesal adecuado para revisar** las resoluciones, órdenes o **sentencias finales de un laudo de arbitraje del TPI.** Como se sabe, el recurso de *certiorari* es el mecanismo discrecional

---

[7] Apéndice, págs. 4-7.

disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de menor jerarquía. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Las Reglas de Procedimiento Civil disponen que el Tribunal de Apelaciones expedirá el recurso de *certiorari* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023).

En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020). El delimitar la revisión a instancias específicas tiene como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp.*, et al., 202 DPR 478 (2019). La Regla 52.1 de Procedimiento Civil de 2009, *supra*, viabiliza por excepción la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, (2) asuntos relativos a privilegios evidenciarios, (3) anotaciones de rebeldía, (4) casos de relaciones de familia, (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia.

Los criterios que el Tribunal de Apelaciones examina para ejercer la discreción sobre la expedición del *certiorari* se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R.40, según enmendado por *In re: Enmdas. Regl. TA*, 198 DPR 626 (2017).[8] El foro apelativo debe ejercer su facultad revisora

---

[8] La referida Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023.

### B. La revisión de los laudos de arbitraje

La negociación colectiva está revestida de un gran interés público ya que constituye un medio eficaz para promover la estabilidad y paz industrial. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros*, 2025 TSPR 7, resuelto el 15 de enero de 2025. Por ello, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, sino que se deben considerar instrumentos que crean relaciones e intereses a la luz de la política pública laboral estatal. *AAA v. UIA,* 199 DPR 638, 648 (2018).[9] Según ha sido interpretado, el convenio colectivo es consistente con el principio de la libertad de contratación, pues una vez las partes prestan su consentimiento, éste se convierte en la ley entre las partes. *C.O.P.R. v. S.P.U.,* 181 DPR 299, 320 (2011). No obstante lo anterior, cabe recordar que todo acto que goza del principio de la libertad en la contratación no puede contravenir las leyes ni la Constitución. *Íd.*

Ahora bien, como regla general, en los convenios colectivos las partes establecen voluntariamente un sistema de quejas y agravios.

---

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro). *Íd.*
[9] Citando a *C.O.P.R. v. S.P.U.,* supra, pág. 320.

*Íd.*, pág. 326. Mediante dicho sistema de quejas y agravios que las partes establecen, se precisa el contenido y alcance de las disposiciones contractuales. Así las cosas, en el convenio colectivo las partes pueden pactar que sus reclamos se canalicen mediante un proceso de arbitraje. En tales casos, tanto las uniones como los patronos sustituyen a los tribunales por los árbitros. *Íd.*

A tales efectos, el Tribunal Supremo ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso. *AAA v. UIA*, 200 DPR 903, 922 (2018). Según se desprende de lo anteriormente expuesto, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

En cuanto a los laudos arbitrales, en nuestra jurisdicción rige la norma de que éstos gozan ante los tribunales de justicia de una especial deferencia. *C.O.P.R. v. S.P.U., supra,* pág. 363-364. No obstante, lo anterior, la auto-restricción judicial reconocida en nuestra jurisdicción no es absoluta. En aquellos casos en los cuales el convenio colectivo disponga que el laudo debe ser conforme a derecho, cualquier parte afectada puede impugnarlo en el foro judicial, teniendo los tribunales la facultad para revisar su corrección y validez jurídica. A. Acevedo Colom, *op. cit.*, pág. 395; *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 682-683 (2006).

Cuando el procedimiento de arbitraje es conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas en el campo laboral de derecho sustantivo, emitidas por el Tribunal Supremo de Estados Unidos y el de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.,* 119

DPR 62, 68 (1987). De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *Íd.* Es por ello, que, el Tribunal no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que el mismo no haya sido resuelto conforme a derecho. No obstante, cabe indicar que una discrepancia de criterio con el laudo no justifica la intervención judicial, pues destruye los propósitos fundamentales del arbitraje, que es resolver las controversias rápidamente, sin los costos y demoras del proceso judicial. *Íd.*

La parte que solicita la revocación o anulación de un laudo por alguna de las instancias permitidas deberá exponer las razones que den lugar a su pedido y aducir la prueba necesaria que sostenga su petición. Como antes expresado, que el laudo se haga conforme a derecho no implica que los tribunales vayan a invalidarlo por el mero hecho de que exista una discrepancia de criterio. Para invalidar el laudo, resulta necesario que surja de forma evidente que el mismo no se resolvió conforme a derecho. *Íd.*

Carente disposición a los efectos de que el laudo de arbitraje sea conforme a derecho, los tribunales no deben revisar alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho, a pesar del sentir concurrente o disidente que puedan albergar. En estos laudos, las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta. *C.O.P.R. v. S.P.U.,* supra.

De manera que, si en el convenio de sumisión las partes acordaron que el laudo sería emitido con arreglo a derecho, como ocurre en el presente caso, el tribunal tiene la facultad para revisar los méritos jurídicos del laudo. En esos casos, la revisión judicial es

análoga a la de las decisiones administrativas. Por tal razón, las determinaciones de hechos en laudos de arbitraje conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. Claro está, aún en estos casos, los tribunales de instancia no deben inclinarse a decretar la nulidad del fallo a menos que efectivamente el mismo no haya resuelto la controversia conforme a derecho. *Íd.*

### III.

El peticionario cuestiona la revocación de laudo emitido en el caso de referencia. En esencia, sostiene que procede ejercer nuestra discreción para intervenir con el dictamen recurrido. Ello, en la medida que, el foro primario erró en su análisis del Convenio Colectivo, particularmente sobre el proceso de investigación, alegadamente realizado fuera del término establecido en el Artículo IX(B) Sección 3. Arguyó que, el TPI incidió al resolver que el árbitro había concluido de forma equivocada, que no procedía la destitución por abandono de empleo por ser producto de un proceso de investigación tardío.

Por su parte, la AAA sostiene que el dictamen recurrido correctamente establece que, el árbitro ignoró el lenguaje del Convenio Colectivo en su función de interpretación. A su entender, el árbitro tenía que aplicar lo pactado por las partes sobre sí se configuró el abandono de empleo, y distinto a ello, descansó su análisis en el alegado inicio tardío del proceso de investigación. Resalta que, los hechos esenciales no están en controversia. El señor Guerra Delgado estuvo ausente durante un periodo consecutivo de más de cinco (5) días laborables y no se presentó a trabajar el 28 de diciembre de 2020. No asistió a sus labores hasta el 2 de febrero de 2021. A su entender, el abandono de empleo se configura después de cometer las cinco ausencias consecutivas sin autorizar. De ahí, es que el supervisor puede tomar conocimiento oficial, para así dar

inicio al término de veinte (20) días laborables para presentar la solicitud de desestimación. Basado en lo anterior, arguye que la *Sentencia* emitida, mediante la cual se revoca el laudo impugnado, se sostiene en derecho.

Como se sabe, los tribunales no debemos inclinarnos fácilmente a decretar la nulidad de un laudo. Aun así, dicha doctrina no es absoluta y permite nuestra intervención si el árbitro no procedió conforme a Derecho. Ante una solicitud de revisión de laudo, el foro primario viene obligado a corroborar el debido proceso de ley, los hechos medulares, el Convenio Colectivo y el derecho aplicable. Tras nuestra evaluación del expediente del caso, no hallamos que el foro primario se haya excedido en el ejercicio de discreción, al analizar la razonabilidad del laudo impugnado y si fue conforme a derecho. El TPI claramente consignó que:

> [...]
>
> Por otra parte, el árbitro en su sumisión no estableció como asunto a resolver ningún planteamiento de arbitrabilidad o sobre incumplimiento con los términos del Convenio Colectivo. Sin embargo, sí dispuso que tenía que resolver conforme al Convenio Colectivo, como le solicitaron las partes en sus proyectos de sumisión.
>
> La prueba admitida, los hechos probados y las disposiciones del Convenio Colectivo claramente demuestran que la aplicación del Árbitro fue incorrecta y contraria a este, porque ignora lo pactado y definido por abandono de empleo al determinar cuándo advino el conocimiento oficial de los hechos el supervisor inmediato. Esta omisión constituye una violación a la política pública al no aplicar el lenguaje claro negociado por las partes en el Convenio Colectivo, el cual es producto de la negociación colectiva.
>
> Por otra parte, tal desviación del lenguaje del Convenio Colectivo también demuestra que el Árbitro no resolvió todos los asuntos llevados a su consideración, pues debía resolver si hubo o no abandono de empleo y para ello, tenía que discutir y aplicar los hechos la definición del abandono de empleo contenida en el Convenio Colectivo. Entiéndase, el Árbitro debió discutir si el empleado incurrió en ausencias injustificadas por un periodo consecutivo de más de cinco (5) días laborables. Con esa discusión, el Árbitro podía determinar la fecha en que se configuró o surtió efecto el abandono, que, en este caso, fue la fecha del 5 de enero de 2021. Es desde esa fecha que válidamente se adviene en conocimiento oficial del abandono de empleo y que comenzó a cursar el término de veinte (20) días laborables para presentar la solicitud de investigación.

[...][10]

Al revisar sosegadamente el recurso discrecional ante nos, colegimos que el peticionario no nos ha puesto en posición para intervenir con el dictamen recurrido. La revisión judicial realizada por el foro primario encuentra apoyo en el expediente y no se aparta de la correcta interpretación del Convenio Colectivo y el derecho aplicable. En ausencia de fraude, conducta impropia, falta de debido proceso de ley o jurisdicción, violación a la política pública o controversias pendientes de resolución, no procede la revisión judicial solicitada. Por ello, debemos conferirle deferencia al dictamen recurrido.

Por los fundamentos expuestos, no identificamos criterio alguno conforme la Regla 40 de nuestro Reglamento, supra, que sostenga revertir la presunción de corrección del dictamen recurrido.

**IV.**

Por todo lo antes, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[10] Apéndice, págs. 14-15.